UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Hunter, | Case No. 21-CV-0742 (ECT/HB) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Mayo Clinic and Shaina Archer, | |
| Defendants. | |

This action comes before the Court on Plaintiff Michael Hunter's Class Action Complaint [ECF No. 1] ("Complaint"); application to proceed *in forma pauperis* ("IFP") [ECF No. 2] ("IFP Application"); and (3) motion seeking a temporary restraining order or preliminary injunction [ECF No. 3] ("TRO/PI Motion"). For the following reasons, the Court recommends dismissing this action and denying as moot the IFP Application and the TRO/PI Motion.

I.  **BACKGROUND**

The Court received the Complaint on March 19, 2021. Hunter purports to bring a class action[1] against two defendants: the Mayo Clinic and Shaina Archer, who is a physician assistant employed by the Mayo Clinic. (Compl. at 1–3.)

---

[1] The scope of the proposed class is unclear. The Complaint's caption says that Hunter seeks to represent "all others similarly situated," and Hunter suggests that the class consists entirely of Minnesota citizens. (Compl. 1–2.) Because, as discussed below, Hunter cannot represent a class, the exact scope of the class is relatively unimportant.

In the Court's view, the Complaint's allegations fall into two major categories. The first group of allegations concerns Hunter's own interactions with Defendants. Hunter alleges that in February 2021, he went to a medical clinic in Albert Lea, Minnesota (presumably affiliated with Defendant Mayo Clinic), seeking a prescription for an increased dose of the drug Lyrica.[2] (Compl. at 3.) Hunter alleges that during this visit, he underwent certain procedures, including a blood-pressure test and a "talk with a nurse." (*Id.* at 4.) He contends these procedures were unnecessary, done to "falsely charge Medicare and Medicaid programs for billing." (*Id.*)

Hunter further alleges that on March 6, 2021, he again went to a clinic—apparently the same one visited in February 2021. (*Id.* at 5.) He states that he had requested care from "both a physician and neurologist," but claims that Defendant Archer deliberately "omitted" this request "[f]rom clinic records." (*Id.* at 6.) As the Court understands it, Archer denied Hunter the dose increase that he requested; Hunter claims that Archer was aware that this would cause an increased possibility of "emergency medical treatment and irreversible nerve damage in [Hunter's] lower legs and feet." (*Id.*) Hunter also asserts that Archer failed to do an examination that "professional skill requires." (*Id.*)

Hunter alleges that on March 11, 2021, he again went to a Mayo Clinic in Albert Lea. (*Id.* at 8.) Hunter claims that a pharmacist there inappropriately gave him pregabalin instead of Lyrica. (*Id.*) As a result, Hunter says, his feet and lower legs began

---

[2] Hunter alleges that Lyrica is a "controlled drug"; the Court understands him to mean that federal law classifies Lyrica as a controlled substance. (*See id.* at 3.)

to hurt later that day (and continue to hurt) due to "neurotrophy." (*Id.*) Hunter also suggests that pregabalin "may cause death." (*Id.*)

A second thread throughout the Complaint consists of allegations that Defendants (primarily the Mayo Clinic, not Archer) are engaged in some larger pattern of fraudulent conduct—*i.e.*, conduct beyond Defendants' interactions with Hunter himself. For instance, as part of stating that he underwent unnecessary procedures during his February 2021 visit, Hunter asserts that the Mayo Clinic is, in similar fashion, fraudulently billing the Federal Bureau of Prisons. (Compl. at 4.) Hunter also alleges that the Mayo Clinic inappropriately uses physician assistants rather than "real doctors" in an attempt to save money. (*Id.* at 5.)

Hunter asserts that the Mayo Clinic "is not above the law," and he appears to claim that it has violated the federal False Claims Act ("FCA"). (*Id.* at 5.) He states that he "has a right to reward" as a "whistle blower," and that he has standing to pursue a FCA claim because he is "in the class of American taxpayers" purportedly affected by the Mayo Clinic's "crimes." (*Id.*) Hunter alleges that he will ask the United States to "intervene, investigate, and require Mayo Clinic [to] repay in full" the funds it allegedly "cheated." (*Id.* at 7.) Hunter claims that one of the defendants—presumably the Mayo Clinic—"uses mail and wire transmission" as part of a "criminal []enterprise," and that the Mayo Clinic's conduct thus violates the Racketeer Influenced and Corrupt Organizations ("RICO") Act. (*Id.* at 8.)

For relief, Hunter seeks compensatory damages, punitive damages, and a declaratory judgment. (*Id.* at 11.) He asks this Court to "[o]rder the Attorney General of

the United States to intervene and seek appropriate remedy upon behalf of the United States." (*Id.*) Hunter also requests an "emergency writ of mandatory injunction" to bar the Mayo Clinic from "destroy[ing] right to doctor of choice" and to prevent Hunter from being "a target of State of Minnesota legislation mislabeling him to be a drug abuser." (*Id.*)

## II.   ANALYSIS

### A.   Pleading Standards

Hunter did not pay the filing fee for this action; he elected instead to apply to proceed IFP. After reviewing the IFP Application, the Court concludes that Hunter qualifies financially for IFP status. But a court will deny an IFP application—and dismiss an action—when the IFP applicant's complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3]

In reviewing whether a complaint (in whole or in part) states a claim on which relief may be granted, this Court must accept as true all of the complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). The complaint's factual

---

[3] Section 1915(e)(2) speaks in terms of "the case," but caselaw is clear that courts may also dismiss portions of a case that run afoul of § 1915(e)(2)(B). *See, e.g.*, *Bonczek v. Bd. of Trustees Nat'l Roofing Indus. Pension Plan*, No. 14-CV-3768 (JRT/LIB), 2015 WL 1897837, at *4 (D. Minn. Apr. 23, 2015) (dismissing portion of action under § 1915(e)(2)(B)); *Abduljabbar v. Minn. Dep't of Transp.*, No. 14-CV-3583 (ADM/JSM), 2014 WL 7476513, at *4 (D. Minn. Nov. 5, 2014) (same), *R. & R. adopted*, 2015 WL 75255 (D. Minn. Jan. 6, 2015).

allegations need not be detailed, but must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing a complaint's sufficiency, a court may disregard legal conclusions that are couched as factual allegations. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *See, e.g.*, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

   B.  **Class Action Claims**

  As a threshold point, the Court must address Hunter's attempt to assert a class action. Nothing in Hunter's filings suggests that he is an attorney. As a result, he cannot bring a class action, for it is well established that nonlawyers cannot represent other entities or people in federal court. *See, e.g.*, *United States v. Mengedoht*, 790 F. App'x 841, 841–42 (8th Cir. 2020) (citing *Knoefler v. United Bank of Bismarck*, 20 F.3d 347, 348 (8th Cir. 1994)); *Prouty v. Dep't of Hum. Servs.*, No. 20-CV-928 (WMW/DTS), 2020 WL 6888103, at *3 (D. Minn. Oct. 20, 2020) (citing cases), *R. & R. adopted*, 2020 WL 6875423 (D. Minn. Nov. 23, 2020). The Court therefore recommends dismissing without prejudice the Complaint to the extent it seeks to bring claims on behalf of anyone other than Hunter.

   C.  **FCA Claims**

  Various parts of the Complaint suggest that Hunter believes that the Mayo Clinic is liable under the FCA. (*See, e.g.*, Compl. 5 (citing FCA).) These allegations fail to

5

state a claim for which this Court can grant relief. A private individual can bring FCA claims only through a *qui tam* action. *See* 31 U.S.C. § 3730(b)(1) ("A person may bring a civil action for a violation of [§ 3729] for the person and for the United States Government. The action *shall* be brought in the name of the Government." (emphasis added)); *State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*, 137 S. Ct. 436, 440 (2016) (discussing *qui tam* actions). This means that Hunter can bring FCA claims only "in the name of the Government," and he does not do so in this suit.[4]

To let Hunter proceed with this action's FCA claims in their present form, this Court would effectively have to create a new private right of action. But this is impermissible without some evidence that Congress intended to provide that private right, *see, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017) (citing cases); *Osher v. City of St. Louis*, 903 F.3d 698, 702 (8th Cir. 2018) (same), and Hunter provides no such evidence whatsoever. The Court therefore recommends dismissing Hunter's FCA claims without prejudice.

### D.   RICO Claims

As noted above, Hunter claims that Defendants have violated the RICO Act. (Compl. at 8.) The Court concludes that Hunter's RICO claim is insufficiently pleaded.

In relevant part, the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct

---

[4] The Court is aware that Hunter has brought another action before this District that names the Mayo Clinic as a defendant and specifically purports to be a suit in the federal government's name. *See United States ex rel. Hunter v. Dep't of Health & Human Servs.*, No. 21-CV-0802 (JRT/DTS).

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To establish a civil RICO claim, a plaintiff must show that that the defendant "engaged in '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *H&Q Props., Inc. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015) (quoting *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009)). Even if the plaintiff adequately pleads that the defendant violated RICO, however, the claim will fail if the plaintiff has not "1) sustained an injury to business or property 2) that was caused by [the] RICO violation." *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (quoting *Asa-Brandt, Inc. v. ADM Inv. Servs., Inc.*, 344 F.3d 738, 752 (8th Cir. 2003)); *see also* 18 U.S.C. § 1964(c) (authorizing a civil action by "[a]ny person injured *in his business or property* by reason of a violation" (emphasis added)).

For present purposes, Hunter's RICO claim has numerous problems. Hunter fails to properly allege any sort of "enterprise." Furthermore, he does not allege personally suffering any injury to "business or property" caused by Defendants' alleged RICO violations. And given that civil RICO claims based on fraud—like Hunter's—must be pled with specificity, *H&Q Props.*, 793 F.3d at 856 (quoting Fed. R. Civ. P. 9(b)); *In re EpiPen Direct Purchaser Litig.*, No. 20-CV-0827 (ECT/TNL), 2021 WL 147166, at *5 (D. Minn. Jan. 15, 2021) (citing authorities), Hunter's vague allegations that Defendants "use[] mail and wire transmission" to "perpetrate fraudulent treatments" are not enough to properly plead a RICO claim.

As a result, the Court recommends dismissing Hunter's civil RICO claims without prejudice.

### E.     Remaining State-Law Claims

Once Hunter's FCA and RICO claims are put aside, what remains are Hunter's contentions that Defendants performed improper tests on him, refused to prescribe him a higher dose of Lyrica, and tried to prescribe him pregabalin instead.  The Court is unaware of any federal-law cause of action governing these allegations.  They appear to sound in fraud, negligence, and/or medical malpractice, but these are classic state-law causes of action that cannot themselves provide this court subject-matter jurisdiction over this action.[5]

This leaves the issue of supplemental jurisdiction.  Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

---

[5] Diversity jurisdiction under 28 U.S.C. § 1332 does not apply here.  For diversity jurisdiction to apply, there must be "complete diversity" between the parties: no defendant be a citizen of the same state as any plaintiff.  *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553–54 (2005); *Preston v. Sumstad*, No. 20-CV-2103 (NEB/DTS), 2021 WL 1116400, at *1 (D. Minn. Mar. 24, 2021) (quoting *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007)).  Hunter does not allege complete diversity here, and from what he does allege, complete diversity does not appear to exist.  *See* Compl. 2–3.

The Complaint appears to assert that jurisdiction over this action exists based on 28 U.S.C. §§ 1362 and 1343(a)(1)–(4).  (*See* Compl. at 2.)  Not so.  Section 1362 gives federal courts jurisdiction over certain suits by Indian tribes, and § 1343 provides jurisdiction for certain civil-rights claims.

controversy under Article III of the United States Constitution." Section 1367(c)(3) specifies, however, that a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction."

The U.S. Court of Appeals for the Eighth Circuit has discussed these provisions as follows:

> A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity. [I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (citations and internal quotation marks omitted; brackets and ellipses in original).

Here, the quote's last sentence is key. Under this Court's recommendation, Hunter's federal-law claims will be "eliminated" well before trial. There is no indication that this case would be "unusual" in any way that would support exercising supplemental jurisdiction over the remaining state-law claims. The Court thus recommends declining to exercise supplemental jurisdiction over Hunter's state-law claims, and therefore recommends dismissing them without prejudice for lack of subject-matter jurisdiction.

F.     **IFP Application and TRO/PI Motion**

Given the above recommendations, the Court further recommends denying the IFP Application and the TRO/PI Motion as moot.

Based on the foregoing and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff Michael Hunter's Class Action Complaint [ECF No. 1] be **DISMISSED** without prejudice.

2. Hunter's motion seeking leave to proceed *in forma pauperis* [ECF No. 2] be **DENIED** as moot.

3. Hunter's motion seeking a temporary restraining order and/or a preliminary injunction [ECF No. 3] be **DENIED** as moot.

Dated: April 16, 2021                    *s/ Hildy Bowbeer*
                                         Hildy Bowbeer
                                         United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).